UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
———————————————————————————x

ROBERT DOBRYNIO,

       Plaintiff,

   -against-                              04 Civ. 9607 (CM)

CENTRAL HUDSON GAS & ELECTRIC
CORPORATION,

       Defendant.

———————————————————————————x

DECISION AND ORDER GRANTING DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT

McMahon, J.:

      In this age discrimination action, plaintiff – who voluntarily retired from the position of

Information Systems Auditor at defendant Central Hudson Gas & Electric (CHG&E) – seeks

damages for alleged adverse employment action he allegedly suffered prior to his retirement.

Because, on the undisputed evidence, plaintiff does not even come close to making out a prima

facie case of age discrimination, defendant's motion for summary judgment is granted and the

complaint is dismissed with prejudice.

**Standards on Motion for Summary Judgment**

      A party is entitled to summary judgment when there is no "genuine issue of material fact"

and the undisputed facts warrant judgment for the moving party as a matter of law. Fed. R. Civ.

P. 56 (c); Anderson v. Liberty Lobby, Inc., 477 U.S. 242 (1986). In addressing a motion for

summary judgment, "the court must view the evidence in the light most favorable to the party

against whom summary judgment is sought and must draw all reasonable inferences in [its]

favor." Matsushita Elec. Indus. Co. Ltd. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).

Whether any disputed issue of fact exists is for the Court to determine. Balderman v. United

States Veterans Admin., 870 F.2d 57, 60 (2d Cir. 1989). The moving party has the initial burden

of demonstrating the absence of a disputed issue of material fact. Celotex v. Catrett, 477 U.S.

317, 323 (1986). Once such a showing has been made, the non-moving party must present

"specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e). The party

opposing summary judgment "may not rely on conclusory allegations or unsubstantiated

speculation." Scotto v. Almenas, 143 F.3d 105, 114 (2d Cir. 1998). Moreover, not every

disputed factual issue is material in light of the substantive law that governs the case. "Only

disputes over facts that might affect the outcome of the suit under the governing law will

properly preclude summary judgment." Anderson, 477 U.S. at 248. Finally, the nonmoving

party "must do more than simply show that there is some metaphysical doubt as to the material

facts." Matsushita Elec. Industries Co., 475 U.S. at 586. To withstand a summary judgment

motion, sufficient evidence must exist upon which a reasonable jury could return a verdict for

the nonmovant.

    In age discrimination cases, as in all discrimination cases, the plaintiff bears the burden

of introducing evidence that would, if credited, establish every element of his prima facie case. If

plaintiff meets that minimal burden, defendant must come forward with a legitimate non-

discriminatory reason for taking the action it took. At that point, the burden shifts back to the

plaintiff to prove, with evidence and not conclusory supposition, that the defendant's articulated

rationale is a pretext for age discrimination. McDonnell-Douglas Corp. v. Green, 411 U.S. 792,

806, 93 S. Ct. 1817 (1973).

## Facts Pertinent to the Motion

All of the following facts are undisputed: [1]

Plaintiff, who was born on September 23, 1940, began his employment with CHG&E in Poughkeepsie, New York on March 31, 1980. (Pl. Dep. 28; Amend. Compl. ¶ 23). He was hired as an Auditor in the Company's Internal Auditing Department. (Pl. Dep. 28, 30). In August, 1985, Plaintiff transferred to the Information Systems Department as a Programmer Analyst. (Pl. Dep. 30). In March, 1999, he transferred back to the Internal Auditing Department as an Auditor. (Pl. Dep. 38). His supervisor in Internal Auditing was Roberta DeMaio, Audit Manager. (Pl. Dep. 40-41).

During the time Ms. DeMaio supervised Plaintiff, she prepared four Performance Reviews for him covering the periods: (a) August 1, 1999 to July 31, 2000; (b) August 1, 2000 to February 28, 2001; (c) March 1, 2001 to December 31, 2001; and (d) January 1, 2002 to December 31, 2002. (Pl. Dep. 86, 93, 95, 104-05; Saccomano Exs. E, F, G and H). On each one of Plaintiff's performance appraisals prepared by Ms. DeMaio, he received an "Overall Rating" of "Consistently Performed to Requirements." (Pl. Dep. Ex. 9 at page 3, 8; Ex. 10 at page 6; Ex. 11 at page 6; Ex. 12 at page 6). Plaintiff discussed each one of his reviews with Ms. DeMaio, consistent with the Company's established practice. (Pl. Dep. 88, 93, 96, 105).

---

[1] Although Plaintiff was deposed, he also submitted an affidavit. It is in large measure conclusory and is of little evidentiary value. In deciding this motion, I look first to the deposition to determine whether any factual issues are controverted. Only then do I consult the affidavit. To the extent that the affidavit is inconsistent with plaintiff's deposition testimony, it must be disregarded, and so deemed insufficient to raise any genuine issue of fact. Hayes v. New York City Dept. of Corrections, 84 F.3d 614, 619 (2d Cir.1996).

These reviews ordinarily were accompanied by raises. After his May 2002 review, concerning his performance in 2001, he received a one-time bonus of $1500 rather than a raise. (Pl. Dep. 96). Receiving a one-time bonus did not increase his future benefits or pension. (Pl. Dep. 97)) Plaintiff complained to his co-workers and to Ms. DeMaio, but not to anyone else in Human Resources. (Pl. Dep. 99-100).

Other than the issue with the bonus versus raise, Plaintiff had no complaints about Ms. DeMaio and believes that he was treated fairly by her. (Pl. Dep. 86-87).

*Plaintiff's Insubordinate Conduct and the Resulting*
*October 23, 2003 One-Day Suspension.*

Diane Seitz replaced Ms. DeMaio as the supervisor for the Internal Auditing Department in or about July, 2003. (Pl. Dep. 48, 109). At the time Ms. Seitz became the supervisor in the Internal Auditing Department, Lorraine Gilbert and Bruce Marley were the other Auditors in the department. (Pl. Dep. 109, 168).

Plaintiff claims Ms. Seitz is the individual at the Company who subjected him to discrimination based on his age. (Pl. Dep. 62-63)

Plaintiff scheduled a vacation day for Friday, September 19, 2003. (Pl. Dep. 110). He planned to go to Pennsylvania, to visit his daughter at Penn State University and attend a football game. (Pl. Dep. 111).

Hurricane Isabel was expected to impact the Poughkeepsie area shortly before September 19. As a result, Seitz told Plaintiff he would have to cancel his vacation day and come to perform storm restoration work. (Pl. Dep. 110-11; Saccomano Aff. Ex. J). Plaintiff refused this direct order from his supervisor, telling Seitz, "Money doesn't grow on trees." (Id.) (He was apparently referring

to money he had spent to go from Poughkeepsie to State College, Pennsylvania). Plainitff did not appear for work on September 19.[2]

To the best of Plaintiff's knowledge, one other employee was out of the office on September 19: Beth Allen, the Payroll Supervisor. (Pl. Dep. 116-17). He does not know if Allen was disciplined for her absence. Id.

On October 22, 2003, Plaintiff met with Seitz and Thomas C. Brocks, Assistant Vice President for Human Resources. (Pl. Dep. 114-18). At the meeting Plaintiff was told that he was being suspended without pay for one day because he refused to work on September 19 and was insubordinate in his dealings with Seitz about that issue. (Pl. Dep. 117).

Although the Company had an internal complaint procedure for reporting claims of alleged discrimination or retaliation in the workplace, Plaintiff did not file an internal complaint regarding the one-day suspension. (Pl. Dep. 121; See Saccomano Aff. Ex. D at pages Bates Stamped 0656 through 066).  Rather, some four months later, Plaintiff's counsel sent a letter to CHG&E on February 9, 2004, claiming Plaintiff had been unlawfully disciplined in October, 2003.  Sacc. Aff. Ex. P. The letter also contended that he had "been subject to a series of memorandums concerning time at work." Id.  It said that Plaintiff "could not fathom" why he would have been treated this way, so he concluded that it must have been because of his age. Id.

In the letter, counsel suggested that CHG&E negotiate a retirement severance package for his client. Counsel suggested 75 weeks' salary as an acceptable severance package. (See id.).

_____

[2] Although it is not material to this motion, it is not clear that he was in fact needed on September 19.  It is a matter of public record that Hurricane Isabel made landfall well South of New York. Several thousand people in the New York area lost power. Unfortunately, the record does not indicate whether CHG&E was impacted, or whether restoration work was needed in the wake of the storm, and I will not speculate about the matter.

Defendant's Human Resources Department did not respond to Plaintiff's demand or conduct any investigation into his claim of discrimination.

*Plaintiff's Performance Review And Merit Increase in 2004.*

As the supervisor for the Internal Auditing Department, Ms. Seitz prepared Plaintiff's 2004 review (Dep. Ex. 14 at page 6). On the review, Ms. Seitz noted, under the topic "Interpersonal & Communication Skills," that Plaintiff had been disciplined in October, 2003 for gross insubordination, which resulted in a one day suspension. (Pl. Dep. Ex. 14 at page 5).

Plaintiff's performance review indicated that his merit increase for the year was $1,018.00. (Pl. Dep. 125; Pl. Dep. Ex. 14 at page 9). Plaintiff does not contend that the merit increase should have been greater. (Pl. Dep. 145-46). There was no recommendation for a bonus. Consistent with company procedure, Seitz gave Plaintiff a copy of his performance review on April 27, 2004, and asked Plaintiff to schedule a time for them to discuss it. (Pl. Dep. 122-23, 138; Pl. Dep. Ex. 14). Plaintiff refused numerous requests to schedule such a meeting, although he was told that it violated Company policy to refuse to meet with his supervisor to discuss his review. (Pl. Dep. 142-43). Nonetheless, Plaintiff announced he would *not* meet with Ms. Seitz to discuss his review unless Chris Capone, the Company's Chief Financial Officer and Treasurer, was also present. (Pl. Dep. 124). CHG&E allowed the meeting to go forward on Plaintiff's terms. (Pl. Dep. 124).

At this meeting, Plaintiff was told that there had been an "oversight" in sending information about his merit increase to the payroll department. As a result, he was being paid as though his merit increase were $600 – even though the performance appraisal clearly indicated that he was entitled to $1,081. (Pl. Dep. 65, 125, 128, 145). Capone indicated that the mistake

regarding Plaintiff's salary increase would be corrected, and it was. Plaintiff received all the money to which he was entitled by virtue of his $1,018 increase. (Pl. Dep. 125, 128, 144-45).

Plaintiff believed his meeting with Capone was handled very professionally. (Pl. Dep. 154).

*The November 2004 Letters*

Plaintiff had filed a charge with the EEOC on July 23, 2004. (see below). In November 2004, Plaintiff (through counsel) sent a letter to the Human Resources Department of CSE&G, announcing to the Company that he had received his Right to Sue letter. Counsel's letter also referenced the letter in which he had demanded severance. It appears to the court that this was a last-ditch effort to stave off litigation.

The response came in a letter from Brocks, the Human Resources Vice President, who denied that Plaintiff had been subjected to any discrimination and declined to offer Plaintiff a severance package. Brocks indicated that Plaintiff was welcome to continue working with CHG&E for as long as he wished, but said that during his employment he would be held to the same performance standards as every other CHG&E employee. Saccomano Aff. Ex. P

According to Plaintiff, he was "not harassed in any way, shape or form" after receiving this letter (Pl. Dep. 197).

*Plaintiff's 2004 Performance Review*

Plaintiff received a review of his 2004 performance in March 2005. In this review, Plaintiff for the first time was rated "Below Expectation." Seitz attributed this to the additional

work imposed on the Audit Department as they took on additional responsibilities for compliance with the Sarbanes-Oxley Act. She deemed Plaintiff's work with regard to those responsibilities "not up to speed." (Seitz Dep. 58-59).

However, Plaintiff was awarded a $1400 merit salary increase for the year 2005, as well as a $1,134 bonus for 2004. His title, job responsibilities and perquisites did not change in any way following the 2004 review.

Plaintiff voluntarily retired from CHG&E on July 1, 2005. (Pl. Dep. 12-13). Plaintiff testified that he retired because of the "stress of the lawsuit." (Pl. Dep. 13). He does not press any sort of wrongful discharge claim in this lawsuit.

### Procedural History

On or about July 23, 2004, Plaintiff mailed a charge of discrimination to the Equal Opportunity Employment Commission (EEOC), alleging discrimination based on age. In this charge, Plaintiff identified the following acts of alleged discrimination: his one day suspension on October 23, 2003; his performance appraisal in April 2004, in which the fact that he had been disciplined was noted; and the failure to pay him at a rate commensurate with his full 2004 merit increase of $1,018 for a period of time.

Without requesting a response from CHG&E, the EEOC concluded that there was no probable cause to find any violation of law on the facts asserted by Plaintiff. The Commission dismissed the charge on the merits on September 8, 2004 and issued a right to sue letter.

On December 7, 2004, Plaintiff filed his original complaint in this court, alleging that his suspension and subsequent negative performance review in April, 2004 constitute violations of Title VII, N.Y. Exec. L. § 290 *et seq*., and the ADEA. The complaint also asserts that the April

2004 review resulted in denial of raises and promotions (Cmplt ¶¶ 43-44). However, I see no evidence in the record that plaintiff ever applied for a subsequent promotion, and plaintiff clearly received a raise in 2003.

Although the original charge contained no retaliation claim, the December 7 complaint did allege that the negative review in April 2004 came in retaliation for his February 9, 2004 complaint of age discrimination. Apparently recognizing the possibility of a "failure to exhaust" defense, Plaintiff filed a second charge with the EEOC five days before he filed the lawsuit. The underlying facts supporting this second charge were exactly the same as the facts supporting the original charge. However, this time, Plaintiff argued that his April 2004 performance appraisal and the "error" in processing his 2004 merit increase were, not acts of age discrimination, but acts of retaliation for the fact that he had complained, through counsel, about his one day suspension in October 2003. (Haberman Aff. Ex. 14). Once again the Commission dismissed the charge as failing to state a claim without first seeking any response from CSE&G. Plaintiff thereafter filed an amended complaint that was in all material respects identical to his original complaint.

Plaintiff had never filed a charge with respect to his 2004 year-end review.


**Discussion**

In order to make out a claim of age discrimination under either the Age Discrimination in Employment Act (ADEA), 29 U.S.C. § 621 *et seq*., or the New York State Human Rights Law, Exec. Law § 290 *et seq*., a plaintiff must prove four things: he was within the protected age group; he was qualified for his job; he suffered a materially adverse employment action; and the

adverse employment action occurred under circumstances that a reasonable trier of fact could conclude gave rise to an inference of age discrimination. Wanamaker v. Columbian Rope Co., 108 F. 3d 462, 467 (2d Cir. 1997); Spence v. Maryland Cas. Co., 995 F. 2d 1147, 1155 (2d Cir. 1993); Tyler v. Bethlehem Steel Corp., 958 F. 2d 1176, 1180 (2d Cir.), *cert. denied*, 506 U.S. 826 (1992) (confirming that age discrimination suits under New York's Human Rights Law are subject to the same analysis as claims under Title VII or the ADEA).

**The One Day Suspension (1) Was Not An Adverse**
**Employment Action, and (2) Did Not Occur in**
**Circumstances Giving Rise to an Inference of Discrimination**

The one day suspension that was given to Plaintiff on October 23, 2003 did not materially alter the terms and conditions of his employment. Nor was not administered in circumstances that admit of an inference of age discrimination. For this reason, the claim that the suspension violated ADEA and the New York State Human Rights Law must be dismissed.

A materially adverse employment action is one that substantially alters the terms and conditions of a plaintiff's employment. As the Second Circuit has put it, a reasonable trier of fact, using an objective standard, must be able to conclude that the total circumstances of a plaintiff's working environment changed to become unreasonably inferior and adverse when compared to a typical or normal (not an ideal) working environment. Phillips v. Bowen, 278 F.3d 103, 109 (2d Cir. 2002). Not every adverse employment action qualifies as material, because not every adverse employment action works a substantial alteration in the terms and conditions of a person's employment. Materially adverse changes "might be indicated by termination of employment, a demotion evidenced by a decrease in wage or salary, a less distinguished title, a material loss of benefits, significantly diminished material responsibility, or other indices unique

to a particular situation." <u>Galabya v. New York City Bd. Of Educ.</u>, 202 F.3d 636, 639 (2d Cir.

2002).

I reject as a matter of law Plaintiff's contention that the loss of one day's pay worked a

substantial change in the terms and conditions of his employment. Indeed, it did not work any

change in the terms and conditions of his employment at all! Plaintiff was suspended for a day:

he did not work; he was not paid for staying home on the day of his suspension. When he

returned after one day off the job, it was to the same position, with the same title and office, at

the same salary, with the same duties and perquisites. An employee will no doubt view

suspension, for whatever reason (including the most justified discipline), as an *adverse*

employment action. But being suspended for a single day, with no long term consequences

whatever, is not an actionable adverse employment action because it is not *material*.[3]

If this were not enough to defeat Plaintiff's discrimination claim (and it is), the

undisputed facts demonstrate that Dobrynio was suspended because he (1) disobeyed a direct

order from his supervisor to report to work on a day when he had planned to take a vacation, and

(2) responded to his supervisor in an inappropriate manner when she gave him the order he

disobeyed. There is no evidence that the supervisor, Diane Seitz, ever made any adverse

comment about Plaintiff's age. Plaintiff has not identified anyone else who was insubordinate to

Seitz, concerning working on September 19 or anything else, who was not disciplined. Plaintiff

offered no evidence that any other employee was absent without leave on September 19, let

---

[3] Contrary to the assertion in Plaintiff's brief, defendant did not concede that the
suspension was materially adverse; Rather, defendant was willing not to contest the point in
order to proceed to its argument that the suspension was not handed down in circumstances
giving rise to an inference of discrimination. However, the court is not willing to overlook this
point.

alone evidence that any such employee was spared discipline. Plaintiff did not avail himself of the company's internal grievance procedure to complain that the suspension constituted age discrimination; he never made such a suggestion until four months after the event, when his counsel wrote the February 9 letter in which Plaintiff first mentioned the concept of employment discrimination (and demanded that his employer negotiate a severance package for him). In that letter, Plaintiff's counsel all but admitted that his client had no *evidence* that age motivated the discipline imposed; the letter stated, "Mr. Dobrynio cannot fathom why the company chooses to treat him this way after all his years of loyal service. [He] is left to believe that the treatment by Central Hudson is discriminatory toward him, particularly due to his age." (Saccomano Aff., Ex. P). The conclusion does not necessarily follow from the treatment.

Contrary to Plaintiff's suggestion, the facts that he was suspended and was 63 years old do not, in and of themselves, entitle him to a jury trial. Whether Plaintiff thinks Seitz was fair or unfair in ordering him to work on September 19, his refusal to obey a direct order, and his mouthing off at his supervisor, are matters of undisputed fact. It is not the job of this court or of a jury to second guess an employer's decision to administer discipline unless there is evidence that the employer's demands were made in bad faith or with intent to discriminate. Thornley v. Penton Publishing Inc., 104 F. 3d 26, 29-30 (2d Cir. 1997). Plaintiff offers no such evidence here.

While Plaintiff claims that another employee, Beth Allen (Payroll), was allowed to take vacation on September 19, that fact, without more, does not tend to prove that plaintiff was denied his vacation day because of his age. First, plaintiff does not establish that he and Allen were in the same position – it is entirely possible that Allen was not an essential employee in an

emergency, while plaintiff, the company's auditor and computer specialist, was essential. Plaintiff admits that he does not know if Allen was disciplined for her absence. (Pl. Dep. 117). Furthermore, Allen did not report to Seitz, the individual who was allegedly targeting plaintiff based on his age. Even more important, plaintiff agrees that his suspension was due, in large part, to the attitude he displayed when addressing his manager. (Pl. Dep. 115-16). Finally, plaintiff does not give Ms. Allen's age (Dobrynio Aff. ¶ 43), which is essential if a trier of fact is to infer differential treatment based on age.

Perhaps another manager might have overlooked the conduct for which plaintiff was suspended. (Seitz Dep. 45-46). And perhaps Brocks did not offer plaintiff an opportunity to explain his side of the story. However, bad management is not the same thing as age-based discrimination.

Because plaintiff has failed to make our two of the four elements of a prima facie case of age discrimination in connection with his suspension, it is not necessary to discuss whether plaintiff has met his Stage 3 McDonnell-Douglas burden to raise a genuine issue of fact concerning pretext.

**The So-Called "Negative" Performance Appraisal**
**Is Not, as a Matter of Law, and Instance of Retaliation**

Plaintiff's next allegation is that his 2003 performance review, which was delivered by Ms. Seitz on April 27, 2004, was an act of retaliation for his February 9 complaint of age discrimination. The review gave plaintiff an overall rating of "Consistently Performed to Requirements." This is the same rating he had received for the four previous review periods, from a supervisor who, according to plaintiff's own testimony, treated him fairly.

Nonetheless, Plaintiff argues that his review constituted a "materially adverse employment action" because it contained a notation that he had been disciplined (the suspension).

But the review was accurate. Plaintiff *had* been disciplined. The inclusion of this indisputable fact in the review does not constitute a "materially adverse alternation of employment conditions" as a matter of law. <u>Fairbrother v. Morrison</u>, 412 F.3d 39, 56 (2d Cir. 2005). Therefore, defendant is entitled to summary judgment dismissing this claim of retaliation.

The fact that Plaintiff believes (for purposes of this lawsuit) that he was disciplined on account of his age is irrelevant. First, as noted above, he did not introduce so much as a scintilla of evidence to buttress his charge that the reason why he was suspended was his age. Second, and more important, what Plaintiff believes is of no moment. The mere fact that an employee was disciplined, or that a notation to that effect was placed in his personnel file, does not, without more, qualify as a material adverse worsening of the terms and conditions of his employment. <u>Id.</u> Here, the record reveals that there was discipline, but nothing more – no change whatever in the terms and conditions of Plaintiff's employment.

So Plaintiff's challenge to his performance appraisal for the year 2003 falls by the wayside.

Although Plaintiff's second charge cited only the April 27, 2004 performance appraisal as retaliatory, Plaintiff's opposition to the motion for summary judgment states that his 2004 year end review (which was prepared in February 2005 – after Plaintiff filed his second charge in December 2004 – and delivered to Plaintiff on March 6, 2005) is also retaliatory. That review downgraded Plaintiff's performance from "Consistently Performed to Requirements" to

"Occasionally Below Requirements (Needs Improvement)."

Plaintiff did not file an EEOC charge concerning his year-end review. However, this court has subject matter jurisdiction, not only over allegations raised in Plaintiff's EEOC complaint, but also over other allegations of discrimination "reasonably related" to those claims. Butts v. City of New York Department of Housing Preservation & Development, 990 F.2d 1397, 1402-03 (2d Cir. 1993). A claim is reasonably related when a litigant is "alleging retaliation by an employer against an employee for filing an EEOC charge." Id. at 1402.

The 2004 review downgrading Plaintiff's performance rating was delivered after Plaintiff commenced this lawsuit. That is some circumstantial evidence to support an inference that the filing of the lawsuit tainted the review – even though Plaintiff had previously received a letter from his employer telling him that he was free to continue to work at the company for as long as he liked. Therefore, this Court has subject matter jurisdiction to consider claims of discrimination arising out of the 2004 year-end review.

However, in this age discrimination case, the issue is not whether Plaintiff's file contained criticisms of his performance, but whether, using an objective standard, the terms and conditions of his employment changed materially as a result of that criticism. They did not. Even after the 2004 performance review was delivered, Plaintiff's title and job responsibilities did not change. Neither did his benefits or perquisites. Plaintiff was not disciplined or reprimanded. His work environment did not change; by his own admission he was not harassed "in any manner, shape or form." He was even recommended for, and received a merit increase of $1400. He also got a bonus for work performed in 2004, despite the downgrade in his overall rating.

Plaintiff's performance was criticized. He subjectively believed that the criticism was unfair and unfounded. Employees often believe that employers' criticisms are unfounded. But all that means is that there is a disputed issue of fact concerning whether the criticism was warranted. Unfortunately for plaintiff, that disputed fact is not material, because there is absolutely no evidence that the terms and conditions of Plaintiff's employment were adversely affected by the criticism.

More to the point, even viewing the facts of the record in the light most favorable to the Plaintiff, there is no evidence on the record that discrimination was the motivating factor behind any of defendant's actions. Beyond his conclusory statements that Seitz intended "to clean house"(Dobrynio Aff. ¶ 20), there is no evidence to support any claim of age-based discrimination. [4]

**The Temporary Bonus Discrepancy is Not,**
**As a Matter of Law, Retaliation**

Finally, Plaintiff alleges that the failure to pay him the correct merit salary increment at the outset of the period beginning March 1, 2004 was an act of retaliation for his complaint about the suspension. This claim, too, is without merit.

First, Plaintiff does not offer a scintilla of evidence to support his wholly speculative contention that what defendant identifies as a mistake in transmitting information to the payroll

---

[4] Dobrynio made other claims to the EEOC related to his transfer from the Information Systems Department to Audit sometime in March 1999. His complaint does not raise these issues (and they are clearly time-barred); therefore, this Court does not consider them.

department was anything but.

Second, applying an objective standard, no reasonable trier of fact could conclude that the total circumstance of Plaintiff's working environment changed because he was underpaid a few dollars each paycheck for several months. The review prepared by Seitz clearly indicated that Dobryno's merit increase was supposed to be $1,018 – the amount Plaintiff concedes is correct. The Payroll Department input his raise at $600 because it was given the wrong information. Assuming Plaintiff was paid biweekly, the disparity amounted to less than $16 (pre-tax) per paycheck – a non-material amount on a total salary of over $68,000 per year. On an after-tax basis, the underpayment was even less. Furthermore, once the error was caught, it was promptly corrected, and Plaintiff was paid everything he was owed. These undisputed facts are not the slightest bit suggestive of discrimination. This, no doubt, is why Plaintiff himself testified that the matter was simply a clerical error. (Dobrynio EBT 128, 145) He cannot contradict himself simply in order to defeat this motion. <u>Hayes v. New York City Dept. of Corrections</u>, 84 F.3d 614, 619 (2d Cir.1996).

### Conclusion

For the reasons set forth above, defendant's motion for summary judgment is granted and the complaint is dismissed with prejudice. The Clerk of the Court is directed to enter judgment for defendant, and to close the file.

Dated: March 9, 2006

_____

U.S.D.J.

BY FAX TO

Barry Haberman, Esq.
Joseph Saccomano, Esq.